Good morning. The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, counsel. Thank you for being with us via Zoom this morning, at least morning where we most of us are. We are here to hear the case of Mejia Vega v. United States Citizenship Services. At least that's how it appears on our caption. Ms. Tolchin, you are first up, and we're happy to hear from you whenever you're ready. Thank you, Your Honor, and good morning. My name is Stacey Tolchin, and I represent Mr. Mejia Vega. I would like to reserve five minutes of my time for rebuttal. Mr. Mejia Vega seeks review of USCIS's denial of his U-Visa waiver. He requested the U-Visa because he was a victim of a crime. In 2008, he was at a school event when a gunman was shooting into a crowd. He heard the shots approach the gunman who pointed the gun directly at him. Despite this, he maneuvered to tackle the gunman, knock the gun away, and hold the gunman until police arrived. He cooperated with the prosecution of the gunman, and the gunman was eventually convicted of attempted murder. Despite this act of heroism, Mr. Mejia Vega remained subject to removal due to his own criminal and immigration record. Now, as the victim of a crime, he is eligible to apply for a waiver for certain grounds of inadmissibility for U-Visas under 8 U.S.C. 1182 D-14. That statute applies to the secretary who, in his discretion, may waive grounds of inadmissibility if it is in the public or national interest to do so. But no standards for the public or national interest have been developed. Instead, by regulation, at 8 CFR 212.17, DHS has incorporated in the immigrant waiver at 1182 D-3A, and that provision allows for the admission of otherwise inadmissible non-immigrants at the discretion of the agency. The regulation at 212.17 allows the applicant to meet either the standard at 1182 D-3A or at 1182 D-14. Can you clarify? I thought I read somewhere in the materials that it's now just this D-3A provision that we're focused on. Is that correct? Yes, that's correct. And as you're aware, the court dismissed the based on 8 U.S.C. 1252 A-2B-2, finding that the waiver was discretionary and that there was no statutory hook to confine the agency's exercise of discretion. The consideration of whether the district court was divested of jurisdiction based on 1252 A-2B-2 must start with the well-established strong presumption of judicial review. This is set forth by the Supreme Court in Guerrero-La Esprilla, in Kukana, St. Cyr's, and Vidas. Counsel, I want to make sure I understand precisely your argument. So I'm going to state part of your argument. If I'm wrong, please tell me. But as I understand it, your argument is that Guerrero-La Esprilla is so controlling here that under Miller v. GAMI, we need to basically overrule all of our prior precedent and decide that judicial review is appropriate here. I'm looking, for example, at page 27 of your opening brief. Do I have that right? That is one of our three arguments, Your Honor. Would you like me to go ahead and address that one first? No, I just wanted to make, I mean, however you want to structure your argument, but I just wanted to make sure I understood that one correctly. Right, that is one of the arguments. The first argument is that even under the statutory hook test, and that's the test of this circuit now, we've established that 1252 A-2B-2 doesn't apply. So the court's prior decisions in Spencer Enterprises and ANA require that there's a statutory hook to cabin the exercise of discretion in order to avoid by the court in Paris-Paris, which is the U-Visa case, not the waiver, but the U-Visa case. And is your statutory hook the incorporation of matter of hiranka? Exactly, Your Honor. Right. And it's obviously the statute does not reference the hiranka test, but the hiranka test has been around for four decades. And there's some language in ANA International which talks about that when a precedent decision has been around for a long time, and Congress has amended the decision, Congress is deemed to be unnoticed of what the law is. And if they don't, if Congress doesn't change the law, that's acquiescence. But counsel, you know, here's where my basic problem is. When we look at 1252 A-2B-2, it talks about the authority for which is specified to be in the discretion of the attorney general. So I just have a lot of trouble seeing any daylight for you here, whether we're looking at the Supreme Court case you cited or not. You have one statute that says no jurisdiction if in the discretion of the attorney general, and then you have the statute that governs here that specifically uses those words. I understand that, Your Honor, but the precedent does establish that a agency decision that's published is incorporated into the meaning of a statute when it's amended. And that again is in ANA. And again, we're looking through a lens of clear and convincing evidence that Congress intended to eliminate judicial review. It can be something that is in equipose, but if we're in equipose, then the interpretation that allows for judicial review must prevail. And I'm sorry, go ahead, Judge Freeland. Sorry. I was just on this matter of Hranka incorporation idea, though. Do you have a case that says that the criteria actually get written into the statute when Congress is aware of a regulation? I think you're adding to that doctrine, aren't you? I mean, I think that's what happened in ANA with the good cause standard. In ANA, the court actually looks at, you know, granted in ANA, the good cause standard was in the statute, but it does discuss that when there's an agency decision and there's not anything that's amended, then that's acquiescence. I'm just trying to think really quickly. There is, if I can direct the court to TOR, T-O-O-R, which was the departure bar case. It's the similar concept about amending a statute and not, so it's a similar one. But if I can move on to the second point, Your Honor, which was the Guerrero-Lasbria argument. So I do think that 1252A2B2 after Guerrero-Lasbria. Now, obviously it's a different case. It's a motion to reopen case and it's a criminal bar case, right? Under 1252A2C. So in that case, the court was barred from reviewing everything, not just discretionary decisions, everything. And it says that a discretionary decision is not a case where there's the application of law to undisputed facts. And so if there's no discretion, I'm sorry, if the application of law here, precedent to undisputed facts is legal, then that can't be a decision committed to the discretion of the agency. It can't be, even though the statute says specifically it is. But once the agency makes a precedent decision, that's binding law. So if they did what they did in D14, which was absolutely nothing, there's no standards, then it would be fine, totally discretionary. But once they make a precedent decision and they set out that criteria, that becomes binding law. As I also understand your argument, notwithstanding 1252A2B saying no court shall have jurisdiction, you're arguing that 1182D has to say in order to actually bar jurisdiction here, would have to specifically say in the unreviewable discretion of the attorney general. You've said that if that word were added to 1182D, that would work for stripping us of jurisdiction? So yes, Your Honor, that's our last argument, which is that there's at least nine provisions of the INA where Congress is explicit that a discretionary decision is unreviewable. And so if B2 applies only to statutes where it says in the discretion of the agency, why did Congress have to add all of these provisions to specify something that's not discretionary? How do you respond to the government's argument that adding that word would be surplusage because 1252A2B already says we have no jurisdiction, so why would Congress need to basically say that twice? Because otherwise, those nine provisions are so something is surplusage either way you go. And when you have a lens on the clear and convincing evidence with strong presumption of judicial review, if both provisions, if both readings are surplusage, then the one that allows judicial review has to prevail. How do you reconcile this argument with Kucana and Spencer, which don't have the language thing unreviewable? They just don't address this. This issue has never been addressed in any case yet. And so when a court doesn't address it, then it's not binding. That's I know that's addressed in a Sakamoto duty and a Fernandez Vargas and sorry. Their holdings would be wrong. We would have to say that those two cases have reached the wrong outcome. Well, in Kucana, no, right? Because Kucana is a situation where the regulation divested jurisdiction and the motion to reopen statute never gave any discretionary authority over motions to reopen. Interestingly enough, the motion to reopen statute has no may discretion, nothing. The discretionary authority is in the in the regulation itself. So Kucana would be unaffected by that. And so what was the other case, Your Honor? Spencer. And Spencer. So Spencer is quite complicated. Now, Spencer also found that 1252 H2B2 did not apply because it was not a discretionary decision. So it follows the same line as Kucana, because ultimately everything Spencer says doesn't apply to the case at hand because that was not a discretionary determination. So this gets back to your issue of applying law to fact. Apply law to fact. Precedent to fact. Three factors for Hironka. Only one was applied. That's that's the legal error. We had that one of our decisions that specifically rejected the if you want to call it that, can be found in agency guidance as opposed to the statute itself. I'm not remembering which one, but I'm sure you're familiar with one. It was Porcina, as it was also our case. But Porcina was a national interest waiver case. And Porcina says explicitly, first of all, ANA doesn't apply, even though there was a statutory hook. ANA doesn't apply because it must be narrowed in this because in this case, it's national interest. And when you look at Perez Perez, it again says Porcina only applies because it was a national interest case. And national interest is a whole other can of worms where there's no jurisdiction to review it. But Perez Perez makes clear that the statutory hook argument still applies. And precisely for that reason, I think anything that we had argued in Porcina would not have passed because ultimately it's not reviewable under the national interest issue. And that's it. But I thought the statutory hook argument was that it needed to say something beyond just in the unfettered discretion of the attorney general or the DHS secretary, that it had to give like a good cause or national interest, some kind of standard that would in the statute itself supply a legal baseline against which we as a court could judge compliance. And it seemed as though, I'm not remembering the specific passage, but I thought there was a passage that said, if instead the statute just says discretion, and then all you have is some kind of agency formulated guidelines as to how that discretion is going to be exercised, that's not sufficient, that we can't then jump in and provide judicial review. Right, your honor, that's Spencer. That's exactly what it says. And again, Spencer was again, a decision where they found 1252A2B2 did not apply because it was not even a discretionary statute. So discretion was not a component at all. And I'd like to reserve my remaining time if I may. But I'm sorry, I'll make sure you have time for rebuttal. But I just don't understand how, if that's what Spencer said, and I think you're right, that's the case I must be thinking of, how can that be reconciled with the argument you're asking us to accept today? So because again, first of all, I think it's dicta because Spencer found the statute ultimately wasn't discretionary, right? They say 1252A2B2 doesn't apply, not because there's a statutory hook, but because it's not discretionary. And then ANA comes in and ANA is the first case to say, yes, it's a discretionary decision, but there is a statutory hook, the good cause standard. And so ANA is the first one to say, okay, now, even though B2 would apply, it doesn't because there's a statutory hook. So now we're coming in to say, well, we've got a precedent decision and that's incorporated into the statute. I also do want to direct the court to Hassan. Hassan is a case where they review the regulation, even though they find B2 doesn't apply. And in Gephardt, they discuss that a departure from the pattern or practice is reviewable. And so it does seem like Gephardt and Hassan don't even follow Spencer. Okay, if I may, sir. Thank you. Let's hear from the government. We'll give you time for rebuttal. Excuse the court. My name is Jonathan Robbins and I'm here on behalf of the government in this matter. Good morning to all of you. As you've just discussed at some length with my colleague, the primary question in this case is whether the district court properly dismissed this case pursuant to the catch-all jurisdictional provision at Title VIII USC Section 1252 A2B2. Now the district court dismissed this case in finding that that conclusion was compelled by the plain language of the statute. Now the catch-all jurisdictional provision, the plain language states, and that provision provides, that notwithstanding any other provision of law, and regardless of whether a judgment decision or action is made in removal proceedings, no court shall have jurisdiction to review any other decision or action, the authority for which is specified to be within the discretion of the Secretary of Homeland Security. And when we go to the waiver provision at issue in this case, under 1182 D3A, we see that that provision is plainly set forth to be in the discretion of the Secretary of Homeland Security. It uses the word may, and it also uses the word in his discretion. And there is no other language in there that would in the agency's discretion. What about your opponent's argument, the one I was just asking her about, that, you know, she says that, listen, that's fine, you're right, it does say discretion, but the agency has this decision that sets forth these guidelines, and those have essentially been incorporated into the language of, I guess it's D3A, by virtue of the fact that Congress has since, amended that statute in the wake of that agency decision. Does that provide a hook for us to provide judicial review? No, it does not, Your Honor. The statutory hook has to be language in the statute. And there's a number of problems with the petitioner's argument, so let's sort of go through it one by one. First of all, the argument is contrary to precedent. I think Your Honor alluded to this in the opening presentation. Specifically, the Porcina case dealt with this issue. Agency practice cannot stand in for statutory language, right? And that just makes as follows common sense. If Congress has said that a certain type of issue is not subject to the court's jurisdiction, the agency can't step in and bestow jurisdiction on the courts, right? The Porcina case dealt with this precise issue. The Porcina case pointed out that the Supreme Court in Kukana had rejected the notion that the agency could render something discretionary through regulation that wasn't discretionary in the statute. And in Porcina, the court noted that the inverse was true. That the agency couldn't make something not discretionary that Congress had deemed was discretionary. Now, as it happens, matter of haramka doesn't have in the agency's discretion anyway. If you take a look at the opening paragraphs of matter of haramka, what the agency says in that case is that an application under this provision requires a weighing of at least three factors. So it talks about three factors that flesh out how a waiver is going to be assessed, but it doesn't cabin the attorney general's discretion from considering other factors. So the notion that this case cabins the discretion in such a way that makes it reviewable is not supported by what that decision actually says. But what if though the agency in contravention of that decision just ignored one of the three factors that it was that the decision said needed to be considered? That presumably would be something we could review, right? I don't think that's the case, Your Honor. The restoration over legal claims under section 1252 A2D, this court's precedent in Mamagosian has held that that provision does not apply in district court proceedings. That restoration of that jurisdiction would be restored. I'm sure Your Honor saw that we filed a 28-J about the Supreme Court's recent decision in Patel. I want to emphasize, I don't think your court needs to get into the Patel issue in this case. And I don't think that the claim that's being raised here is a colorable legal claim. But when you look at Patel, I mean, I think it's safe to say the Supreme Court has expanded the scope of the jurisdictional bars at 1252. I know that the Supreme Court was looking at B1, but the analysis that it had with respect to B1 certainly seems to have some similar implications to B2 as well. But to answer Your Honor's question, no, I think under this court's precedent in Mamagosian, that restoration of jurisdiction provision does not apply unless it's in removal proceedings. Yeah, I was more just responding to the argument you were pressing. I'm not even talking about that provision. You were just saying that the matter of Hronka, is that how you say the name? Yes. Didn't cabin the discretion of the DH secretary at all. And I was just saying that, well, if it says you are to consider at least three factors, one, two, three, and then the agency proceeded to only consider two of those, it would seem that that would be, you know, that there's a violation of the legal standard the agency itself had set out. And that would be something a court could, you know, have some for the jurisdictional bar to be under this court's law in A&A, the statutory hook has to be in the language of the decision itself. So the agency's decision can't restore jurisdiction. And it seems like Your Honor is suggesting that you could make sort of an abuse of discretion standard for failing to follow its precedent. But I don't think that's actually consistent with Supreme Court precedent. Now, I want to emphasize that the court doesn't have to reach this. And this actually was not briefed by the parties because the district court did not address the merits of USCIS's decision. And the petitioner has not briefed the merits. So I want to just emphasize that up front. But there is a Supreme Court case that I think maybe speaks to what Your Honor is getting at, which is a case called Kleindienst versus Mandel. In that decision, the Supreme Court was looking at this section 1182 D3A, and the government was making a similar argument about a lack of jurisdiction. We argued that the waiver at issue in that case, which was different waiver, it had to do with excluding non-citizens because they had engaged in advocation of certain political principles like communism and totalitarianism. And the court was looking at that. The government in that case argued that there was no jurisdiction because the waiver at issue in that case was in the unfettered discretion of the agency. Now, the Supreme Court didn't reach that issue because it determined that the waiver was facially legitimate and bona fide. So what Your Honor is suggesting is maybe that the agency didn't follow its precedent. That's usually looked at as an abuse of discretion if they don't follow their precedent. But I think under Supreme Court law, all the court would actually look to is whether the agency decision was facially legitimate and bona fide. So I don't even think we would get into that particular analysis, Your Honor. And when you look at USCIS's decision in this case, the decision plainly passes the facially legitimate and bona fide standard. But the Supreme Court case in that case would be controlling. So if you're asking about, failing to follow a principle in matter of haramka, it seems to be the facially legitimate and bona fide standard would apply, not an abuse of discretion standard. But again, I don't think the court really needs to get into that because the district court resolved this on the jurisdictional statute. The parties that briefed the jurisdictional statute, that's the only thing that the petitioner is asking for. And so again, under the precedent of this court, matter of pristina has already rejected the argument that they're trying to put forward. Now, I also want to address the petitioner's argument with respect to Guerrero-Lasprilla and the jurisdiction that's restored over mixed questions of fact and law. Now, at the outset, I think it's important to understand that although Guerrero-Lasprilla may represent a change in other circuits, it does not represent a change in this circuit. The application, mixed questions of fact and law being subject to review under 1252 A2D was already the law in the circuit under Ramadan and Husiev and other cases of the like. So, Guerrero-Lasprilla doesn't change the legal paradigm in this circuit. Now, as it happens, the Supreme Court in Guerrero-Lasprilla didn't have occasion to address the application of that provision to 1252 A2B. My colleague, Ms. Tolshin, has already pointed out that that was a criminal alien bar case under 1252 A2C, and the court did not have reason to opine on how it affected any of the other circuits. I'll also point out that in Guerrero-Lasprilla, the court was looking at an application of law of facts. It was looking at the due diligence standard with respect to equitable tolling. It didn't implicate a discretionary finding as it does here where we have the statute, which plainly says that the waiver is in the discretion of the attorney general. So, Guerrero-Lasprilla isn't a change in law. It certainly isn't irreconcilable with any law from this circuit because that was the law of the circuit at the time. And so, for that reason, Guerrero-Lasprilla really doesn't have any effect on the outcome of this case. Now, I know that the petitioner is also making an argument that the statute itself should only, the jurisdictional bar should only apply to portions of the statute which not only specify that it's within the discretion of the attorney general or the secretary of homeland security, but also that that provision would also have to itself say that the decision is unreviewable. And as we pointed out, that renders the entirety of the catch-all provision at 1252A2B2 surplusage. You wouldn't need that provision at all if all these other portions of the statute already said that they were unreviewable. And I know my colleague has said, well, this renders the other portion of the statute surplusage. But that's not really true when you think about it. It's important to understand that when we're looking at the immigration statutes, not all of these statutes were passed on the same day, right? We're dealing with a patchwork. So, you know, you have certain provisions that were passed at one time, other provisions passed at another time. And when we're looking at what Congress did in 1252A2B and these jurisdictional bars, what they were doing was they were trying to create a more restrictive jurisdictional scheme. So this catch-all provision is intended to be placed on top of all that patchwork law. So it doesn't render all these other things surplusage when you understand sort these different statutes were passed. So really the petitioner's reading is attempting to put something into the statute that isn't there. The only thing that's required for the jurisdictional bar to apply is that the action or decision in question is specified to be within the decision of the Secretary of Homeland Security. And that's exactly what we have here. We have no other language in the statute that would provide a meaningful legal basis for which by which the when you take a look at the Porcina case, that case is very akin to this case. That was the national interest waiver case. The court explained, look, there may be some case law with respect to how we assess the national interest. But, you know, just because a decision fleshes out how the agency might look at a waiver, that doesn't change the fact that we're still calling for a series of open-ended judgments about what is going to be required for the waiver. And the same is I mean, think about what the Haronka factors are, right? Haronka requires that the agency assess the risk of harm to society, the seriousness of the immigration or criminal violations, the nature of the applicants reasons for wishing to enter the United States. Those are similarly all types of inquiries that call for open-ended judgments, right? They don't they don't really cabin the agency discretion in any way that makes it subject to this court's Your argument is they're not incorporated into the statute anyway, right? Yeah. Oh, I do want to address that. Thank you for reminding me. This is a novel argument that the petitioners are raising that somehow the agency's decisions themselves can provide a statutory hook that's not in the statute. Now, as I've already pointed out, and I think as your honors have pointed out as well, that's really contrary to the precedent of this court, which Spencer and ANA, you know, regardless of which way they came out, I think it has to be said that that agency practice cannot stand in for statutory language. And certainly all of the Supreme Court decisions and immigration cases over the years have really put an emphasis on the plain language of the statute. So that argument should be rejected by the court. And of course, petitioner can cite to no authority that in which an agency decision has supplanted the plain language of the statute. And they actually can't do that, right? If Congress says there's no jurisdiction, the agency can't restore jurisdiction on Congress's behalf, right? It's just sort of logically thinking it should be. I would hope that it's apparent to your honors why that argument really shouldn't hold any muster. Can I ask you, have any other circuits addressed this precise statute in the context of the A2B2 jurisdiction stripping provision? In what regard? With respect any waiver? No, just, I guess all I'm asking is that the combination of statutes we have here, the A2B2 waiver or jurisdiction stripping provision and the 1182D3A provision, that combination, have any other circuit been called upon to address? There was a very similar case in the Seventh Circuit called Tristan Torres. I think it's cited in the briefing. I don't remember if it's, it was definitely a UVISA case. I don't remember if it was this specific waiver of inadmissibility provision. That's the closest analogous case from the out-of-circuit cases. But, I mean, if you want to see where 1252A2B has applied, I know Kucana lists a number of cases where it's applied. Some of them are waiver of inadmissibility statutes, not in connection with the UVISA, but there are other waivers of inadmissibility. Kucana lists a series of them. And again, those are also cited in our briefing as well. But I don't know if there's one with exactly this provision. I have one other question if I don't want to cut off my colleagues. I guess I have to confess I'm at a loss to understand why the government seems so intent on removing this particular individual from the country. He seems to present almost a uniquely sympathetic set of circumstances. Is there no prospect that you all could work out some we are just going to be forced to go forward and decide this case on the merits? I think we do, Your Honor. I mean, the agency, I think, has made clear in its written decision that it is not amenable to exercising a positive exercise of discretion. Otherwise, I think he would have been granted the waiver of inadmissibility. I mean, I understand that certainly there are some sympathetic circumstances, but there are counterpoints to those sympathetic circumstances in this case, specifically the concerns about the criminal history and the So, I mean, I think the agency has made its point on discretion relatively clear in this matter. So, unfortunately, I don't think there's a, I don't think mediation or something of that nature would be of use in this case. Okay, just thought I'd ask. Thank you. Other questions? No. Thank you very much for your time, Your Honors. And the government would respectfully ask that the court dismiss the appeal. I thought we were just going to affirm. I'm sorry. Affirm the district court's decision. Yes. I mean, we have jurisdiction to decide the appeal, right? Yes. I mean, the court should, well, of course, the court has jurisdiction to assess its own jurisdiction. There's no question. Yes. The government requests that the court affirm the district court's decision dismissing this case. Yeah. I mean, I don't mean to be hyper-technical, but I think that matters. It's not that we somehow lack jurisdiction over the court's decision that it lacks subject matter jurisdiction. That's correct, Your Honor. I misspoke. I apologize for that. Yes, we're asking that you affirm the district court's decision. Okay, very good. Thank you very much. Ms. Tolchin, you have time for rebuttal, it looks like. Thank you, Your Honor. Just a few points. I'd like to direct the court to a recent decision, Gonzalez-Caraveo, which is 882, Fed Third, 885. That is a case that addressed the Heckler versus Cheney committed to agency discretion bar to review. Obviously, similar and slightly comparable to this. And it basically was a case where it said, look, we would have had no jurisdiction to review this issue of whether a case should have been administratively closed. But then the agency issued a precedent decision. And now it's law. And so now we can, that's a legal issue and we can determine it. So something that is discretionary can become reviewable when there's a precedent decision. But that has to do with whether there are standards we could apply but isn't the question here whether Congress told us we have no jurisdiction regardless? I'm not sure why the two doctrines really merged in the way you're saying. Well, if the statutory hook analysis is controlling, then we only prevail if HRONCA is incorporated in. But if Guerrero-Lisbria requires a new look of the new lens, what's legal, what's not legal, what's committed to discretion, what's not, then Gonzalez-Caraveo is instructive because it's something, the agency doesn't have discretion to violate its precedent. I also wanted to just quickly, okay, sorry, go ahead. So I mean, it doesn't seem to me like we're under a framework where we need to ask, has jurisdiction been restored for legal questions? Because I think we need to ask, are we in this statute where Congress said we just lack jurisdiction because it's discretionary? You're putting them together, but can you say more about why you think those go together? Because it's not obvious to me that they should. So I think that after Guerrero-Lisbria and after I think sort of Patel in the sense that it looks at all of these terms, an agency or action that is committed to discretion has to be discretionary. And so an agency or action can't be discretionary if the agency is required to follow precedent. That's the argument. I don't think this argument falls under the statutory hook. I can see that. So statutory hook requires incorporation of HRANCA. But as far as the second argument that Guerrero-Lisbria requires a new lens, that's where this argument would come in. And of course the last argument, it would not matter because it's not designated as unreviewable. On that last argument, I realized I don't think I asked my question very precisely earlier. So Kukana and Spencer list statutes that they call discretionary, but that don't have this language you're saying about not reviewable. And that was the aspect of those cases that I was wondering if you could say something about. Yeah. I mean, I think that's definitely true. I saw that as well, Your Honor. But the argument is not addressed. They don't talk about all of these other nine statutes, if not more, that specify that something is unreviewable and comparing that to B-2. And what is the meaning of all of these nine statutes that are explicit about unreviewability? And so our court has said that when an issue is not addressed by the Supreme Court, it's not binding. And so if you look at Durand-Gonzalez from this court, after the Supreme Court's decision of Fernandez-Vargas, that's exactly what it says. There was a similar issue there, not addressed by the Supreme Court, and they found that it wasn't binding. I quickly just wanted to say Kleindies versus Mundell only would not apply here because the applicants in the U.S., there's two components to 1182 D-3A. There's one and two. Two is for people in the U.S. So Kleindies is for people outside the U.S., consulate on reviewability, usually legitimate and bona fide, not relevant. And then the case Torres-Tristan is a UBISA waiver case, but it goes to whether you file a petition for review of the denial versus an APA district court action. So not dispositive here. I finally just wanted to close that again, our lens is there has to be clear and convincing evidence from Congress that judicial review should be taken away. And if that's not there, the strong presumption must then be followed and the agency action must be reviewable under the APA. Thank you very much for your argument. The case just argued is submitted and we are adjourned for this session of the court. This court for this session stands adjourned.
judges: WATFORD, FRIEDLAND, BENNETT